2023 IL App (1st) 220588-U

No. 1-22-0588

Order filed April 28, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE LAW OFFICES OF BRENDAN R. APPEL, LLC and BRENDAN R. APPEL, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| GEORGIA'S RESTAURANT AND PANCAKE HOUSE, INC., an Illinois Corporation, and HARRY KULUBIS, | ) ) ) | No. 18L006214 |
| Defendants | ) ) | |
| (Georgia's Restaurant and Pancake House, Inc., an Illinois Corporation, | ) ) ) | Honorable Christopher Lawler, Marcia Maras, |
| Appellee). | ) | Judges Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Delort and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the judgment of the circuit court over plaintiffs' contentions that the circuit court erred in granting the motion for summary judgment, that the court violated their due process rights in denying the motion for reconsideration, and that the court erred in denying the motion for Supreme Court Rule 137 sanctions.

¶ 2      This appeal arises following the circuit court's grant of summary judgment in favor of appellee, Georgia's Restaurant and Pancake House, Inc. (Georgia's Restaurant), on plaintiffs', The Law Offices of Brendan R. Appel, LLC (Appel Firm) and Brendan R. Appel[1], claims of defamation and false light based on online reviews of Mr. Appel and the Appel Firm written by defendant Harry Kulubis. Mr. Appel alleged that Mr. Kulubis wrote the negative reviews in retaliation for a breach of contract action that Mr. Appel filed against Mr. Kulubis and Georgia's Restaurant after Mr. Appel represented them in commercial litigation. During the pendency of the proceedings, Mr. Kulubis died, and Georgia's Restaurant moved for summary judgment on the basis that Mr. Appel's claims against it were derivative of his claims against Mr. Kulubis. The circuit court granted the motion.

¶ 3      On appeal, Mr. Appel contends that the circuit court erred in granting the motion for summary judgment where his claims against Georgia's Restaurant were not affected by Mr. Kulubis' death because he demonstrated that Georgia's Restaurant committed independent wrongdoing. He maintains that his claims survived even after Mr. Kulubis' death because Mr. Kulubis' tortious conduct was imputed to Georgia's Restaurant. Mr. Appel also asserts that the court violated his substantive due process rights by failing to adequately review his motion for reconsideration. Finally, he contends that the circuit court abused its discretion in denying his motion for sanctions where Georgia's Restaurant filed a meritless and misleading motion to dismiss his complaint. For the reasons that follow, we affirm the judgment of the circuit court.

---

[1]For clarity, we will collectively refer to plaintiffs as the singular "Mr. Appel" unless otherwise noted.

¶ 4                                    I. BACKGROUND

¶ 5     Mr. Appel is a licensed attorney in Illinois who is the sole owner of the Appel Firm. In 2012, Georgia's Restaurant and Mr. Kulubis retained Mr. Appel and the Appel Firm to represent them in a commercial litigation action. After the suit was resolved, Mr. Appel alleged that Georgia's Restaurant and Mr. Kulubis failed to pay his legal fees. Mr. Appel filed suit against Mr. Kulubis and Georgia's Restaurant seeking to recover damages based on their failure to pay the Appel Firm's invoices. Georgia's Restaurant's nonpayment of Mr. Appel's fees is not at issue in the instant appeal.

¶ 6     In his complaint in the case at bar, Mr. Appel alleged that during the pendency of the action to recover fees, Mr. Kulubis "with actual malice on his own behalf and on behalf of Georgia's [Restaurant]" began a "campaign to smear and besmirch" the reputation of Mr. Appel and his firm. This included Mr. Kulubis posting a review of the Appel Firm on Yelp.com and other websites where Mr. Kulubis made allegedly defamatory statements about Mr. Appel's representation. Mr. Appel also alleged that Mr. Kulubis filed a complaint with the Illinois Attorney Registration and Disciplinary Commission (ARDC). Years later, Mr. Kulubis posted an "updated" review, which Appel claimed contained more defamatory statements. Mr. Appel pled claims for defamation *per se* and false light based on the reviews and the ARDC filings.

¶ 7     Both Mr. Kulubis and Georgia's Restaurant filed motions to dismiss the complaint arguing that the lawsuit violated the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2018)), commonly referred to as the anti-SLAPP (Strategic Lawsuits Against Public Participation) statute. Mr. Kulubis and Georgia's Restaurant argued that the suit was a meritless strategic lawsuit brought in retaliation for Mr. Kulubis' exercise of his right to free speech. Mr. Kulubis also alleged that his

reviews were not actionable because the reviews reflected the truth or represented his opinion. Mr. Kulubis and Georgia's Restaurant also asserted that Mr. Appel failed to state a cause of action for defamation *per se* and false light.

¶ 8    Mr. Appel filed a response to the motions arguing that they were frivolous because Mr. Kulubis' conduct did not constitute participation in government. Mr. Appel maintained that Mr. Kulubis and Georgia's Restaurant attempted to obscure the "government nexus" requirement for anti-SLAPP actions despite Mr. Appel pointing out the deficiency to their attorneys.

¶ 9    The court denied the motions to dismiss finding that Mr. Appel's complaint sufficiently alleged the causes of action and that Mr. Kulubis and Georgia's Restaurant had failed to demonstrate that the lawsuit was an improper SLAPP suit because Mr. Kulubis did not create and publish the statements to further any protected right or otherwise participate in government.

¶ 10    Mr. Appel subsequently filed a motion for sanctions pursuant to Supreme Court Rule 137 (eff. Jan. 1, 2018) based on the anti-SLAPP statute motions. Mr. Appel alleged that Mr. Kulubis and Georgia's Restaurant attempted to mislead the circuit court by misstating the law and purposefully omitting relevant factors through the use of selective quoting. Particularly, Mr. Appel alleged that Mr. Kulubis and Georgia's Restaurant attempted to obscure the "government nexus" element in their motions and declined Mr. Appel's offer to withdraw their motions after he identified the error. Mr. Appel maintained that the court should award him fees to compensate him for defending against the patently frivolous motion.

¶ 11    The court denied Mr. Appel's motion for sanctions finding that although Georgia's Restaurant and Mr. Kulubis' conduct may have been "unprofessional," they moved to dismiss the

complaint as a SLAPP in "good faith." The court determined that it did not believe the conduct warranted Rule 137 sanctions, and elected to not award Mr. Appel attorney fees.

¶ 12    Mr. Appel subsequently filed an amended complaint, which added reference to a review Mr. Kulubis wrote of the Appel Firm and Mr. Appel on Avvo.com that mirrored the reviews Mr. Kulubis posted on Yelp.com and the Appel Firm's Facebook page. The amended complaint also clarified the prayer for relief that Mr. Appel's request for compensatory damages included general presumed damages.

¶ 13    In July 2021, Georgia's Restaurant filed a motion for summary judgment and Mr. Kulubis filed a similar motion in August 2021. Georgia's Restaurant sought summary judgment on the basis that Mr. Appel's claims were time-barred, that Mr. Kulubis was not acting as an agent of Georgia's Restaurant at the time he wrote the reviews, and that Mr. Appel failed to provide evidence of specific damages. Mr. Kulubis likewise moved for summary judgment on the basis that Mr. Appel had failed to provide evidence of damages and that his reviews contained substantial facts and opinions. Mr. Appel filed a response to the motions and also filed a motion to bar Georgia's Restaurant's expert witness.

¶ 14    All those motions were fully briefed and set for argument in October 2021. However, the hearing date was continued several times, and on December 14, 2021, Mr. Kulubis died.

¶ 15    The court never held a hearing on those motions and they were never ruled upon. Instead, in January 2022, Georgia's Restaurant and Mr. Kulubis' estate filed a joint motion for summary judgment. Mr. Appel reached a settlement agreement with Mr. Kulubis' estate and therefore only the claims relating to Georgia's Restaurant are relevant for this appeal. In the motion, Georgia's

Restaurant argued that Mr. Appel's causes of action did not survive Mr. Kulubis' death because they were derivative claims brought under a theory of *respondeat superior*.

¶ 16    Mr. Appel also filed a motion for summary judgment arguing that Mr. Kulubis was so integral to the operation of Georgia's Restaurant that they could not be considered separate entities. Mr. Appel acknowledged that Mr. Kulubis' son, Harry P. Kulubis (Harry P.) was the owner of the business, but maintained that Mr. Kulubis controlled and managed the restaurant and its affairs. Mr. Appel intimated that Georgia's Restaurant used Mr. Kulubis to "fight" the Appel Firm online and through the ARDC as retaliation for the attorney fee lawsuit.

¶ 17    The court held a hearing on Georgia's Restaurant's motion for summary judgment, but did not address Mr. Appel's motion. Following the hearing, the court granted Georgia's Restaurant's motion finding that Mr. Appel's claims against Georgia's Restaurant did not survive Mr. Kulubis' death.

¶ 18    Mr. Appel filed a motion to reconsider contending that the court erred in finding that his claims against Georgia's Restaurant abated after Mr. Kulubis' death. The court summarily dismissed Mr. Appel's motion on April 4, 2022. Mr. Appel filed a timely notice of appeal on April 26, 2022. We find that we have jurisdiction to consider the merits of this appeal pursuant to Supreme Court Rule 304(a) (eff. Mar. 8, 2016).[2]

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, Mr. Appel contends that the circuit court erred in granting the motion for summary judgment because Mr. Kulubis' death did not abate the claims against Georgia's

---

[2]We observe that the circuit court included Rule 304(a) language in its order granting Georgia's Restaurant's motion for summary judgment because the settlement agreement between Mr. Appel and Mr. Kulubis' estate had not yet been finalized.

Restaurant. Mr. Appel also contends that the circuit court violated his substantive due process claims by failing to review and consider the motion to reconsider before ruling upon it. Finally, Mr. Appel asserts that the circuit court abused its discretion in denying his Rule 137 motion for sanctions against Georgia's Restaurant based on its frivolous anti-SLAPP motion to dismiss.

¶ 21                                    A. Summary Judgment

¶ 22    Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, when viewed in a light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002) (citing 735 ILCS 5/2-1005(c) (West 2000)). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the circuit court's grant of summary judgment *de novo*. *Lacey*, 199 Ill. 2d at 284.

¶ 23    Mr. Appel first contends that his claims against Georgia's Restaurant were not affected by Mr. Kulubis' death because he proved "independent wrongdoing" by Georgia's Restaurant. Mr. Appel also maintains that Mr. Kulubis' actions are imputed to Georgia's Restaurant because Mr. Kulubis was an agent of the corporation. Mr. Appel asserts that Georgia's Restaurant knew about Mr. Kulubis' defamatory review, but did not attempt to disavow the statements and thereby condoned his tortious activities.

¶ 24    In order to determine whether Mr. Appel's claims against Georgia's Restaurant are derivative of his claims against Mr. Kulubis, we must evaluate the allegations raised in the amended complaint. Mr. Appel alleged that after he filed suit against Mr. Kulubis and Georgia's Restaurant for their failure to pay his legal fees, Mr. Kulubis began a "smear campaign" against Mr. Appel and the Appel Firm, which included publishing the reviews online and filing complaints with the ARDC. Mr. Appel alleged that Mr. Kulubis did so "with actual malice on his own behalf and on behalf of Georgia's [Restaurant]." The complaint does not allege that Georgia's Restaurant, or any owner or officer of the corporation, took any independent action or explicitly authorized or directed Mr. Kulubis' conduct. Similarly, the depositions and other pleadings on file do not show any independent conduct undertaken by Georgia's Restaurant.

¶ 25    We find this court's decision in *Main v. Baker*, 176 Ill. App. 3d 255 (1988) instructive. In that case, the plaintiff brought a libel action against a newspaper reporter and his employer. *Id.* at 256. Prior to the resolution of the case, the reporter who wrote the article died. *Id.* at 257. The circuit court dismissed the plaintiff's complaint against the newspaper with prejudice. *Id.* at 256. On appeal, the plaintiff argued that his claims against the newspaper did not abate at the reporter's death because the newspaper was "sued jointly and severally with the reporter." *Id.* at 257. After reviewing the allegations in the complaint, this court determined that the plaintiff's suit against the newspaper was based on the doctrine of *respondeat superior*. *Id.* The court observed that the counts directed toward the newspaper alleged that the reporter was an employee of the newspaper, " 'was acting within the scope of his employment,' " and published the statements knowing them to be false. *Id.* The court determined that the complaint did not allege any "independent wrong on behalf of the newspaper." *Id.* The court concluded that the claim against the newspaper was "entirely

derivative" of the claim against the reporter. *Id.* The court found that because of the reporter's death and the abatement of the claim against him, there was "no basis for an assessment of liability against the employer." *Id.*

¶ 26 Mr. Appel maintains that *Main* is not applicable here because he alleged in the complaint that "Defendants wrote" the reviews, not just Mr. Kulubis, and that Mr. Kulubis wrote the reviews "on his own behalf and on behalf of Georgia's [Restaurant]." However, these same types of allegations were found insufficient to confer independent liability in *Main*. The complaint in this case is clear that Mr. Appel's allegations are based on reviews that Mr. Kulubis wrote. The complaint does not allege that anyone else at Georgia's Restaurant had any role in drafting and publishing the reviews or that an owner or officer of Georgia's Restaurant instructed Mr. Kulubis to post the reviews on behalf of Georgia's Restaurant. Nor can we find that Mr. Appel adequately alleged independent wrongdoing by his suggestion that Georgia's Restaurant "condoned" Mr. Kulubis' actions by failing to disavow or correct them. Mr. Kulubis' actions were not actions taken or directed by the corporation, so it was not necessary for the corporation to disclaim them.

¶ 27 While we recognize that corporations may be held liable for the wrongful conduct of their agents, such liability typically arises when the agent is acting within the scope of their employment. *Independence Tube Corp. v. Copperweld Corp.*, 74 F.R.D. 462, 467 (1977) (citing *Randall Dairy Co. v. Pevely Dairy Co.*, 274 Ill. App. 474 (1934)); see also, *Haggerty v. Potter*, 111 Ill. App. 433, 434 (1903) ("So also it must appear that the person committing the assault was acting under the authority of the corporation."). Here, there is nothing to suggest that Mr. Kulubis wrote the reviews as part of his employment or under the authority of Georgia's Restaurant. He posted the online reviews from his own personal account and submitted the ARDC complaints in his own name. The

reviews do not mention Georgia's Restaurant and Mr. Kulubis only referred to his own interactions with Mr. Appel. In fact, during his deposition, Harry P. specifically stated that he did not authorize or direct Mr. Kulubis to write the reviews on behalf of Georgia's Restaurant. Although there are circumstances where a principal may be liable for the unlawful actions of an agent even where the agent is acting outside the scope of his authority (see, *e.g.*, *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 589-90 (2009)), we find that such circumstances are not present in this case.

¶ 28    Accordingly, as the circuit court found, Mr. Appel's claims against Georgia's Restaurant are based on the doctrine of *respondeat superior*. "Under the doctrine of *respondeat superior,* a principal may be held liable for the tortious actions of an agent which cause a plaintiff's injury, even if the principal does not himself engage in any conduct in relation to the plaintiff." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 42. This court has recognized that under the doctrine of *respondeat superior*, if the claim against the agent abates, then there is no basis for liability against the principal. See *Main*, 176 Ill. App. 3d at 257 (citing *Towns v. Yellow Cab Co.*, 73 Ill. 2d 133); see also, *Holcomb v. Flavin*, 34 Ill. 2d 558, 564 (1966) (holding that where the "servant" is released from liability, the cause of action against the "master" or "superior" is similarly extinguished.). Therefore, because Mr. Appel's claims against Georgia's Restaurant were derivative of his claims against Mr. Kulubis, the abatement of his claims against Mr. Kulubis due to Mr. Kulubis' death also necessarily abated those claims against Georgia's Restaurant.

¶ 29    Finally, we reject Mr. Appel's assertion that the circuit court should have afforded him an opportunity to amend the complaint to allege independent wrongdoing by Georgia's Restaurant, and so that he could add Harry P. as a defendant. The pleadings and arguments in the record are clear that Mr. Appel's allegations were based on actions taken by Mr. Kulubis, not Georgia's

Restaurant. Moreover, Mr. Appel first asked the court for an opportunity to amend the complaint to add Harry P. as a defendant in his motion to reconsider. It is well-settled that "[a]rguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36.

¶ 30    Mr. Appel next contends that the circuit court erred in granting the motion for summary judgment because all of the factual questions had been resolved at the time of Mr. Kulubis' death. Mr. Appel maintains that the case was "ripe" for decision because discovery had already been conducted and all of the factual questions had been resolved. In support of this contention, Mr. Appel relies primarily on *Tunnell v. Edwardsville Intelligencer, Inc.*, 43 Ill. 2d 239 (1969). In *Tunnell*, the plaintiff brought an action alleging that he had been defamed in a newspaper article published by the defendant. *Id.* at 240. The case was tried by a jury who found in favor of the plaintiff. *Id.* at 241. The trial court set aside the jury's verdict and entered judgment in favor of the defendant and the plaintiff appealed. *Id.* While the appeal was pending, the plaintiff died and his executor sought to be substituted as plaintiff. *Id.* The defendant moved to dismiss the appeal on the ground that the plaintiff's death caused the action to abate. *Id.*

¶ 31    The supreme court found that the action did not abate at the plaintiff's death observing that "there is no abatement upon the death of a party if the litigation has progressed to a point at which the merits of plaintiff's allegations have been affirmatively determined." *Id.* at 242. The court determined that all of the factual questions had been resolved before the plaintiff died, and a reversal of the trial court's judgment notwithstanding the verdict would not necessitate a new trial. *Id.* at 243. The court concluded that the case was ripe for judgment when the plaintiff died and his death did not abate the action. *Id.* at 244.

¶ 32    This court has since explained that "[i]n a bench trial, a case is ripe for judgment when it is submitted to the judge, while in a trial by jury, a case is not ripe for judgment until a verdict is rendered." *Jefferson v. Mercy Hospital & Medical Center*, 2018 IL App (1st) 162219, ¶ 52. This illustrates the difference between the case at bar, where no trial had been conducted, and the circumstances in *Tunnell*, where the jury had already rendered a verdict after a trial. Indeed, the remaining authority cited by Mr. Appel on this issue involve cases where a party died after the case had been submitted to the judge (*In re Marriage of Davies*, 95 Ill. App. 2d 474, 476 (1983) (before the defendant's death, the court entered a judgment of dissolution and drafted an opinion letter providing for the division of marital property with instructions to draft a judgment order conforming to the terms of the letter)); or where an administrative agency had already rendered its decision (*Stonestreet v. Iroquois County Sheriff's Merit Commission*, 150 Ill. App. 3d 1092 (1986) (the plaintiff's death occurred after a hearing and final factual determination from the Merit Commission); *Baker v. Illinois Pollution Control Board*, 32 Ill. App. 3d 660, 664 (1975) (the plaintiff's death occurred after the pollution control board issued its final decision)). The remaining case cited by Mr. Appel, *In re Estate of Scherr*, 2017 IL App (2d) 160889, ¶ 24 is inapplicable because in that case, the decedent perfected his renunciation of his will prior to his death, which was all that was required by statute. As a consequence, his death had no effect on the renunciation. *Id.* Here, neither the court nor an administrative body had made any final factual determinations prior to Mr. Kulubis' death, nor had the case proceeded to a jury trial and the jury rendered a verdict. Accordingly, we find that this case was not ripe for judgment at the time of Mr. Kulubis' death.

¶ 33                                    1. *False Light*

¶ 34     Mr. Appel next asserts that the court erred in granting Georgia's Restaurant's motion for summary judgment on his false light claim. First, Mr. Appel contends that Georgia's Restaurant's motion was not directed at the false claim. Next, he maintains that false light claims survive under the Survival Act (755 ILCS 5/27-6 (West 2020)).

¶ 35     We may quickly resolve Mr. Appel's first argument. He asserts that the motion for summary judgment only discussed the defamation claim and was directed at his "cause" of action, rather than the "causes" of action, demonstrating that it was not directed at the claim for false light. However, in the very first paragraph of the motion, Georgia's Restaurant asked the court enter summary judgment in its favor "by way of a final and appealable order pursuant to Rule 304(a)." Georgia's Restaurant would have no basis for asking for a final and appealable order if the motion was not directed at the entire complaint. Moreover, the first sentence of the argument section of the motion argued that Appel's "*claims*" in this case relied on conduct undertaken by Mr. Kulubis. At the hearing on the motion, Georgia's Restaurant argued that the circuit court should grant summary judgment on both the defamation and false light claims. Accordingly, we find the circuit court did not err in finding that the motion for summary judgment was directed at both of the claims in the complaint.

¶ 36     Mr. Appel next contends that the circuit court erred in finding that his false light claims were abated at Mr. Kulubis' death. In support of this contention, Mr. Appel primarily relies on the language in the Survival Act, which provides:

        "Actions which survive. In addition to the actions which survive by the common

        law, the following also survive: actions of replevin, actions to recover damages for an

injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 6-21 of 'An Act relating to alcoholic liquors.' " 755 ILCS 5/27-6 (West 2020).

Mr. Appel points out that the Survival Act provides that actions to recover damages for an injury to the person survive, but the Act explicitly excepts out slander and libel. Mr. Appel maintains that since the Act does not also except out false light, then it should be included within the ambit of "damages for an injury to the person."

¶ 37    The circuit court rejected this argument, finding that injury to the person as stated in the statute refers to damages of a "physical character," which does not encompass invasion of privacy torts such as false light. Mr. Appel contests this interpretation of the statute arguing that because slander and libel are not torts that cause damages of a "physical character," it would be unnecessary for the legislature to exclude those torts from the "damages for an injury to the person" clause unless that clause also contemplated torts of a non-physical nature.

¶ 38    Despite Mr. Appel's arguments, however, Illinois courts have consistently interpreted the phrase "injury to the person" in the statute to mean physical injury. *Mattyasovszky v. West Town Bus Co.*, 21 Ill. App. 3d 46, 54 (1974), *aff'd*, 61 Ill. 2d 31 (1975) ("The words 'damages for injury to the person' [in the Survival Act] clearly and unequivocally mean damages of a physical character."). In reaching that conclusion, the *Mattyasovszky* relied on *Shedd v. Patterson*, 23 Ill. App. 553 (1923), *aff'd*, 312 Ill. 371 (1924). In that case, the *Shedd* court, in interpreting a previous version of the Survival Act that likewise excepted out slander and libel from "actions to recover

damages for an injury to the person," found that "the action for damages for an injury to the person contemplates damages or injury of a *physical character*." (Emphasis added.) *Id.* at 557. In support of that conclusion, the *Shedd* court relied on interpretations of similar statutes in other states. " 'The language of the statute includes every action, the substantial character of which is bodily injury, or damage of a physical character, but does not extend to torts which do not directly affect the person, but only the feelings or reputation, such as malicious prosecution.' " *Id.* (quoting *Ward v. Blackwood*, 41 Ark. 296, 298 (1883)). Illinois courts' interpretation that damages for an injury to a person means injuries of a physical character dates back to even before *Shedd* in *Denslow v. Hutchinson*, 152 Ill. App. 502, 504 (1910) ("We are of the opinion that the words: 'actions for damages for an injury to the person' in the statute extend to and include only actions for damages to the person of a physical character ***.") Federal courts interpreting the Illinois Survival Act have reached the same conclusion. See, *e.g.*, *Strandell v. Jackson County, Illinois*, 648 F. Supp. 126, 135 (1986) (finding that the plaintiff's claims for false arrest, false imprisonment, invasion of privacy, intentional infliction of emotional distress and negligent infliction of emotional distress did not survive under the Survival Act because they are not physical torts); *Jarvis v. Stone*, 517 F. Supp. 1173, 1176 (1981) ("Illinois courts have expressly held in a variety of factual contexts that non-physical personal torts do not survive under the Act").

¶ 39    Mr. Appel maintains that the faulty logic underpinning these decisions and the circuit's ruling here dates back to the supreme court's decision in *Holton v. Daly*, 106 Ill. 131 (1882) and is erroneously repeated by both this court and the supreme court based on blind adherence to precedent. However, *Holton* involved whether an action under the Survival Act could be maintained where the physical injuries resulted in death, and the supreme court has since overruled

that holding. *Murphy v. Martin Oil Co.*, 56 Ill. 2d 423, 431 (1974). Mr. Appel likewise contends that in *Jones v. Barmm*, 217 Ill. 381 (1905) the supreme court repeated the mistakes of *Holton* and set the stage for decisions like *Denslow* and *Shedd*. In *Jones*, the supreme court found that the term "personal property" under the Survival Act was "intended to apply only to actions for damages to tangible articles and things movable—to chattels—as distinguished from actions for damages to one's business." *Id.* at 383. This court has observed that although *Jones* was not specifically overruled, later cases expanded the definition of "personal property" under the Survival Act to include non-tangible property. *Williams v. Palmer*, 177 Ill. App. 3d 799, 802 (1988) (citing *McDaniel v. Bullard*, 34 Ill. 2d 487 (1966)). Thus, while other early decisions under the Survival Act have been expressly overruled or disfavored over the years, since at least 1910, Illinois courts have consistently recognized that "damages for injury to the person" under the Survival Act encompasses only injuries of a physical character.[3]

¶ 40    Although Mr. Appel maintains that the language of the statute suggests that the legislature had a different intention in drafting the statute, "[a] judicial interpretation of a statute is considered part of the statute itself until the legislature amends it contrary to that interpretation." *People v. Woodard*, 175 Ill. 2d 435, 444 (1997). To the extent that Mr. Appel asks us to depart from supreme court precedent on this matter, we observe under the doctrine of *stare decisis*, when the supreme court "has declared the law on any point, *it alone can overrule and modify its previous opinion*, and the lower judicial tribunals are bound by such decision and it is the duty of such lower tribunals to follow such decision in similar cases." (Emphasis in original.) (Internal quotation marks

_____

[3]The phrase "damages for an injury to the person" also appears in the Illinois Code of Civil Procedure Personal Actions statute (735 ILCS 5/13-202). Courts interpreting this section have likewise found that this clause encompasses only injuries of a physical nature. See, *e.g.*, *Berghoff v. R.J. Frisby Manufacturing Co., a Division of Western Capital Corp.*, 720 F. Supp. 649, 652-53 (1989).

omitted.) *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 61 (quoting *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 38). Accordingly, we find that Mr. Appel's false light claim is not saved by the Survival Act and abated with the death of Mr. Kulubis.

¶ 41    Mr. Appel next raises some ancillary attacks to the circuit court's judgment. He contends that the court erred in finding that it could not rule on his motion for summary judgment because a jury demand had been made. The record reveals, however, that the circuit court made no such finding. In support of this argument, Mr. Appel cites a portion from the report of proceedings where the court discussed that the case had not been submitted to a jury. These comments, however, were made in response to Mr. Appel's arguments that the case was "ripe" for judgment under *Tunnell*, and had nothing to do with whether the court could rule on Mr. Appel's motion for summary judgment.

¶ 42    Finally, Mr. Appel contends that the circuit court's own delays created a situation where Mr. Kulubis died before the court could hear his motion for summary judgment. Mr. Appel points out that after Mr. Kulubis and Georgia's Restaurant filed their motions for summary judgment and Mr. Appel filed his motion to bar their expert witness, the court originally set a hearing date for October 2021. The court then continued the matter five times and Mr. Kulubis died before the court could rule upon the motions. Mr. Appel stops short of assigning any error to the circuit court, but maintains that he was "penalized" by the court's "many delays." It is unclear what sort of relief Mr. Appel is seeking by raising this argument. It is worth pointing out, however, that Mr. Appel did not file his motion for summary judgment until February 22, 2022, two months after Mr. Kulubis died. Regardless, we find no error based on the court's management of its docket.

¶ 43                                    B. Motion to Reconsider

¶ 44    Mr. Appel next contends that the circuit court erred in failing to "actually review" his motion to reconsider. Mr. Appel points out that the court denied his motion in a summary manner the day after he filed it. He maintains that the court could not have adequately considered his motion before ruling on it, which violated his due process rights.

¶ 45    Our supreme court has held that a party's due process rights are met when the court conducts an orderly proceeding where "a party receives adequate notice and an opportunity to be heard." *Reichert v. Court of Claims of State of Illinois*, 203 Ill. 2d 257, 261 (2003). Here, Mr. Appel was permitted to submit his motion to reconsider and that motion was considered by the court. This satisfied Mr. Appel's due process rights. *Id.* The fact that Mr. Appel now takes issue with the court's ruling on the motion does not mean that the court violated his constitutional rights. See *Reyes v. Court of Claims of State of Illinois*, 299 Ill. App. 3d 1097, 1105 (1998) ("Due process does not guarantee against erroneous or unjust decisions by courts which have jurisdiction of the parties and the subject matter [citation] and a constitutional question is not presented where a court may have misconstrued the law or committed an error for which its judgment should be reversed.").

¶ 46    Mr. Appel maintains that the court violated his due process rights because it failed to adequately consider his motion. However, we presume that the circuit court considered all competent evidence in reaching its judgment and that presumption may only be rebutted where the record affirmatively shows the contrary. See *Getto v. City of Chicago*, 392 Ill. App. 3d 232, 243 (2009) (Gordon, J., dissenting); *Belmont Nursing Home v. Illinois Department of Public Aid*, 108

Ill. App. 3d 660, 664 (1982). Here, the record does not affirmatively show that the court failed to consider Mr. Appel's motion.

¶ 47    Finally, we observe that any challenge Mr. Appel raises regarding the circuit court's failure to adequately consider or review the motion is effectively moot because on *de novo* review we may consider the substance of the motion on our own. See *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002) (finding that we review *de novo* a trial court's ruling on a motion to reconsider where the motion "brings into question the propriety of the trial court's application of substantive law to the facts presented before it."). Although Mr. Appel filed a lengthy motion to reconsider, the arguments contained therein were primarily recitations of the arguments he made in opposing the motion for summary judgment and at the hearing on the motion. A motion to reconsider should be denied where it merely recites or reiterates previously made arguments. See *William v. Dorsey*, 273 Ill. App. 3d 893, 903 (1995); *Farley Metal, Inc. v. Barber Coleman Co.*, 269 Ill. App. 3d 104, 116 (1994). As such, we find nothing improper based on the circuit court's ruling on the motion.

¶ 48                                    C. Rule 137 Sanctions

¶ 49    Mr. Appel next asserts that the circuit court abused its discretion in denying his motion for Rule 137 sanctions against Georgia's Restaurant. Mr. Appel maintains that Georgia's Restaurant filed an intentionally misleading motion that omitted key elements for recovery in an attempt to deceive the court. He contends that he pointed out Georgia's Restaurant's error, but Georgia's Restaurant refused to file an amended pleading.

¶ 50    Supreme Court Rule 137 provides, in pertinent part:

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018)

"The purpose of Rule 137 is to prevent parties from abusing the judicial process by imposing sanctions on litigants who file vexatious and harassing actions based upon unsupported allegations of fact or law." *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). "When reviewing a decision on a motion for sanctions, the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies, Corp.*, 315 Ill. App. 3d 238, 244 (2000). We will not overturn the circuit court's ruling on Rule 137 sanctions absent an abuse of discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). We will find that

a circuit court has abused its discretion where no reasonable person would take the view adopted by the court. *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001 (1996).

¶ 51    Here, the circuit court denied Mr. Appel's motion for sanctions finding that Georgia's Restaurant moved to dismiss in "good faith." The court noted that Georgia's Restaurant's conduct may have been "unprofessional," but the court did not believe that it was sanctionable.

¶ 52    A review of Georgia's Restaurant's motion to dismiss demonstrates that it engaged in selective quoting so as to minimize the "government nexus" requirement. For example, in support of its motion, Georgia's Restaurant cited the supreme court's decision in *Sandholm v. Kuecker*, 2012 IL 111443. Georgia's Restaurant cited to that case for the proposition that: "a SLAPP suit is one which 'chills and diminishes citizen participation in *** the exercise of these important constitutional rights.' "). The full quote from *Sandholm* provides: "a SLAPP suit [is] one which 'chills and diminishes citizen participation in *government*, *voluntary public service*, and the exercise of these important constitutional rights.' " (Emphasis added.) *Sandholm*, 2012 IL 111443, ¶ 43.

¶ 53    This selective quoting, however, does not demonstrate that Georgia's Restaurant filed the motion with the intent to harass and was unsupported by facts or law. In fact, in its reply in support of its motion it addressed the governmental action element arguing that legal proceedings were government actions under the anti-SLAPP statute. Indeed, the anti-SLAPP statute "further identifies a SLAPP as an 'abuse of the judicial process' which 'can and has been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs.' " *Id.* The circuit court's comments in its order denying the motion for sanctions

reflect that it recognized Georgia's Restaurant's potentially deceitful tactics, but declined to grant sanctions. That decision does not constitute an abuse of discretion.

¶ 54   Mr. Appel also asserts that the circuit court improperly denied him sanctions because he was appearing *pro se*, but that is not what the circuit court's order reflects. The court noted that attorneys appearing *pro se* are generally not entitled to recover attorney fees, but acknowledged that the anti-SLAPP statute "authorizes courts to award a moving party who prevails on a SLAPP motion 'reasonable attorney's fees and costs incurred in connection with the motion.' " The court observed, citing *Department of Conservation ex rel People v. Lawless*, 100 Ill. App. 3d 74 (1981), that it had discretion to allow or refuse enumerated litigation and other fees to attorneys appearing *pro se* on their own behalf. The court ultimately elected to not award Mr. Appel attorney fees.

¶ 55   We acknowledge that in *McCarthy v. Taylor*, 2019 IL 123622 the supreme court held that Rule 137 permits a court to impose sanctions for attorneys who represent themselves *pro se* against frivolous claims. *Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant and Pancake House, Inc.*, 2021 IL App (1st) 192523, ¶ 56. The circuit court's decision to not award attorney fees to Mr. Appel in this case does not violate that holding. Instead, the court first determined that sanctions were not warranted in this case because Georgia's Restaurant's conduct was not sanctionable. The court then exercised its discretion to not award Mr. Appel attorney fees, noting that it had the discretion to do so. Accordingly, we find no error based on the court's decision to not award attorney fees to Mr. Appel.

¶ 56                                III. CONCLUSION

¶ 57   For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 58   Affirmed.